IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

MEGHAN DEVRIES, individually and on behalf )
of all others similarly situated, )
                                                        )
                Plaintiff, )
                                                        )        No.  18 cv 01219
    vs. )
                                                          )        Judge Charles R. Norgle
ULTA BEAUTY, INC., )
                                                          )
                Defendant. )
_____ )

**PLAINTIFF'S MOTION FOR REMAND PURSUANT TO 28 U.S.C. § 1447(c)**

      NOW COMES Plaintiff MEGHAN DEVRIES ("Plaintiff"), individually, and on behalf of all others similarly situated, by and through counsel, and for her *Motion to Remand Pursuant to 28 U.S.C. § 1447(c)* ("Motion"), states as follows:

**I.    INTRODUCTION.**

      On February 8, 2018, Plaintiff filed her Class Action Compliant ("Complaint") against Defendant ULTA BEAUTY, INC. ("Defendant") in the Circuit Court of Cook County.  *See*, Dkt. # 1-3.  In the Complaint, Plaintiff alleges that Defendant has a routine practice of repackaging and resealing beauty products that have previously been purchased, used, and returned by Defendant's customers, before returning those used products to its shelves to be purchased by other consumers.  *See generally*, Complaint.  The Complaint seeks injunctive and monetary relief on behalf of Plaintiff and two classes of similarly situated individuals—*i.e.*, an "Injunctive Relief Class" and a "Damages Class" (collectively, the "Classes").  *See generally*, Complaint.

      On February 16, 2018, Defendant filed its *Notice of Removal* ("Notice"), removing this case to federal court as provided for by 28 U.S.C. §§ 1441, 1446, and 1453.  *See*, Dkt. # 1.  In the Notice, Defendant asserts that this Court has original jurisdiction over this action under 28

U.S.C. § 1332(d)(2), (5), and (6)—*i.e.*, the bases for federal jurisdiction established by the Class Action Fairness Act ("CAFA")—because the amount in controversy exceeds $5 million, the proposed Classes include at least 100 members, and members of the Classes are citizens of states other than Illinois (which is Defendant's state of citizenship). *See*, Dkt. # 1, ¶¶ 8-12.

As set forth below, Defendant's Notice insufficiently alleges facts supporting the conclusion that the amount in controversy in this case exceeds $5,000,000. Therefore, this Court should remand this action to the Circuit Court of Cook County, and award Plaintiff the costs and expenses incurred—including attorneys' fees—as a result of Defendant's improper removal of this action, pursuant to 28 U.S.C. § 1447(c).

## II.     LEGAL STANDARD.

"It is well established that the burden of establishing proper federal subject-matter jurisdiction rests on the party asserting it." *Muscarello v. Ogle County Bd. of Com'rs*, 610 F.3d 416, 425 (7th Cir. 2010). As such, "the removing party, as the proponent of federal jurisdiction, bears the burden of describing how the controversy exceeds $5 million." *E.g.*, *Spivey v. Vertrue, Inc.*, 528 F.3d 982, 986 (7th Cir. 2008); *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 578 (7th Cir. 2017); *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir. 2006); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir. 2006).

"A defendant's notice of removal…serves the same function as the complaint would in a suit filed in federal court," and is evaluated under the same pleading standards with respect to establishing federal jurisdiction. *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449 (7th Cir. 2005); *Roppo*, 869 F.3d at 578-79. As such, "when a defendant seeks federal court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 553 (2014); *Roppo*, 869 F.3d at 579.

However, "if the plaintiff contests the defendant's allegation" that the amount in controversy exceeds CAFA's $5 million requirement, the Court must find "by the preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Dart*, 135 S.Ct. at 553-54 (internal quotations omitted); *Roppo*, 869 F.3d at 579. Only *after* the proponent of federal jurisdiction meets its burden of persuasion does the burden shift to the opposing party to prove that it is "legally impossible" that the amount in controversy is less than CAFA's jurisdictional threshold. *Blomberg v. Serv. Corp. Int'l*, 639 F.3d 761, 764 (7th Cir. 2011); *Sadowski*, 441 F.3d at 543; *Brill*, 427 F.3d at 449.

### III. ARGUMENT.

#### A. Defendant's Notice Explicitly Denies the Existence of CAFA Jurisdiction.

Given the jurisdictional and pleading standards articulated above, Defendant's Notice was *required* to affirmatively establish that federal jurisdiction exists. *E.g.*, *Roppo*, 869 F.3d at 578; *Brill*, 427 F.3d at 447. Put another way, Defendant bears the initial burden to allege the facts necessary to establish federal jurisdiction, and also "bears the risk of non-persuasion." *Sadowski*, 441 F.3d at 540; *Brill*, 427 F.3d at 447 ("That the proponent of jurisdiction bears the risk of non-persuasion is well established."). Indeed, "jurisdiction may not be sustained on a theory that [a party] has not advanced." *Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 809, n. 6 (1986) (quoted by *Muscarello*, 610 F.3d at 425).

Here, although Defendant's Notice alleges that 28 U.S.C. § 1332(d)'s jurisdictional threshold is met because the amount in controversy exceeds $5 million, Defendant's Notice does not affirmatively demonstrate that CAFA jurisdiction exists. *See*, Dkt. # 1, ¶¶ 11-12. In fact, Defendant explicitly *denies* the factual predicates necessary to establish that such jurisdiction exists. *See*, Dkt. # 1, ¶ 12.

For example, the Notice denies that Defendant engaged in the conduct alleged in the Complaint—*i.e.*, reselling used beauty products that had been previously returned by Defendant's customers. *See*, Dkt. # 1, ¶ 12. Based on its denial that the complained-of conduct even occurred, Defendant's Notice does not establish that there is *any* amount in controversy. Indeed, if Defendant does not resell used beauty products to its customers, Plaintiff and members of the Damages Class could not have purchased *any* used beauty products from Defendant. Similarly, if Defendant does not engage in the conduct alleged in the Complaint, there would be *no* cost of implementing any injunctive relief ordered on behalf of Plaintiff and the Injunctive Relief Class, as Defendant is *already* in compliance with any such order. As such, assuming the facts set forth in the Notice are true, CAFA's $5 million jurisdictional threshold has not been met.[1]

On this point, the decision in *Brill* is instructive. In that case, the defendant removed a putative class action regarding unsolicited fax advertisements—in violation of 47 U.S.C. § 227— to federal court. *Brill*, 427 F.3d at 447. To meet the jurisdictional pleading requirements set forth above, the *Brill* defendant "concede[d] that it sent at least 3,800 advertising faxes," such that the damages permitted by 47 U.S.C. § 227(b)(3) would exceed $5 million. *Brill*, 427 F.3d at 447. The *Brill* court determined that this was sufficient for the defendant to meet its burden of showing that removal was appropriate. *Brill*, 427 F.3d at 449.

Although removal was appropriate in *Brill*, that decision makes clear that "it is not enough to file a pleading and leave it to the court or the adverse party to negate jurisdiction." *Brill*, 427 F.3d at 447; *Barnes v. Aryzta, LLC*, 2017 WL 6947882, at *3 (N.D. Ill. 2017). Rather, Defendant's Notice must set forth sufficient facts such that "one can determine that the

---

[1] To be clear, for purposes of this Section of the Motion, Plaintiff is not contesting the allegations in the Notice. As such, Defendant's allegation that it did not resell used beauty products should be accepted as true. *E.g.*, *Roppo*, 869 F.3d at 579

controversy exceeds $5 million." *Brill*, 427 F.3d at 449 (defendant's admission that sufficient transactions were at issue sufficiently established the factual basis for jurisdiction). Here, Defendant did not do so.

As noted above, Defendant's Notice concedes *nothing*, and explicitly *denies* the factual predicate—*i.e.*, that Defendant resold used beauty products—necessary to establish that there is *any* amount in controversy. *See*, Dkt. # 1, ¶ 12. Importantly, until "the proponent of federal jurisdiction [*i.e.*, Defendant] has explained plausibly how the stakes exceed $5 million," Plaintiff does *not* have to negate the allegations in the Notice, or show that it would be "legally impossible" for recovery to exceed $5 million. *Blomberg*, 639 F.3d at 764; *Sadowski*, 441 F.3d at 543; *Brill*, 427 F.3d at 449. Indeed, "if the burden rested with the proponent of remand, then [Defendant] could have removed…without conceding that it had" engaged in the conduct necessary to put $5 million at issue, which is the *opposite* of the appropriate legal standard. *Brill*, 427 F.3d at 447; *Sadowski*, 441 F.3d at 540; *Roppo*, 869 F.3d at 579.

By filing the Notice, Defendant made the affirmative representation that there was a sufficient factual basis to establish this Court's jurisdiction over this action. *Barnes*, 2017 WL 6947882 at *2; *Mocek v. Allsaints USA Ltd.*, 220 F.Supp.3d 910, 911 (N.D. Ill. 2016). At the same time, however, Defendant's Notice "negates the basis on which it filed its removal petition." *Barnes*, 2017 WL 6947882 at *3. Because "Defendant tried to have it both ways by asserting, then immediately disavowing, federal jurisdiction" (*Mocek*, 220 F.Supp.3d at 911), Defendant "abdicated [its] burden" of "proving federal court jurisdiction" (*Barnes*, 2017 WL 6947882 at *3). Therefore, this matter should be remanded to the Circuit Court of Cook County pursuant to 28 U.S.C. § 1447(c).

B. **Defendant's Notice Fails to Adequately Establish that the Amount in Controversy Exceeds CAFA's Jurisdictional Threshold.**

Even if the allegations in Defendant's Notice are facially sufficient to establish that the amount in controversy exceeds CAFA's $5 million jurisdictional threshold, Defendant's estimate as to the amount in controversy must be "plausible and adequately supported by the evidence." *Blomberg*, 639 F.3d at 763; *Roppo*, 869 F.3d at 579; *Oshana*, 472 F.3d at 511. As previously noted, "it is not enough to file a pleading and leave it to the court or the adverse party to negate jurisdiction." *Brill*, 427 F.3d at 447; *Barnes*, 2017 WL 6947882 at *3.

Indeed, the *Brill* decision noted that—in light of a removing defendant's burden to affirmatively prove that removal is appropriate—a removing defendant should not be permitted to assume CAFA's $5 million jurisdictional threshold is met "without making any effort to calculate its maximum exposure, and without conceding that it" engaged in the conduct necessary to put $5 million at issue. *Brill*, 427 F.3d at 447. This "rule makes practical sense" because, without such a requirement, the burden of negating federal jurisdiction would be shifted to the plaintiff, who "would have no way to [do so] this early in the litigation, and plaintiffs in other kinds of suits would encounter similar difficulty." *Brill*, 427 F.3d at 447. Accordingly, "when the defendant has vital knowledge that the plaintiff may lack, a burden that induces the removing party to come forward with the information—so that the choice between state and federal court may be made accurately—is much to be desired." *Brill*, 427 F.3d at 447-48.

Here, to demonstrate that the amount in controversy exceeds $5 million, Defendant references its Annual Report for the fiscal year ending in January 2017 ("2017 Annual Report") showing that Defendant had net sales of more than $4.8 billion. *See*, Dkt. # 1, ¶ 12, n. 1. However, that evidence, in light of the allegations in the Notice and the Complaint, is insufficient

to establish that CAFA's $5 million jurisdictional threshold is satisfied.[2] Importantly, this case only concerns a very limited subset of the beauty products sold by Defendant.

First, the sales figures in the 2017 Annual Report include Defendant's salon services—which by nature, cannot be resold—as well as hair styling tools and other products that would be outside the scope of this lawsuit. *See*, Dkt. # 1-7, p. 6. For example, many of Plaintiff's claims depend upon the legal definition of a "cosmetic," which would not include products such as blow dryers, curling irons, or hair straighteners. *See, e.g.*, Complaint, ¶¶ 26-31, 81-82, 120-121, 134-174. Such products also would not present the same sanitary and hygienic concerns articulated in the Complaint. *See, e.g.*, Complaint, ¶¶ 23-24, 84-85, 109, 146-150, 175-187. These types of irrelevant products and services are also significantly more expensive than the used beauty products at issue.[3] Accordingly, the sales figures in the 2017 Annual Report are overinclusive, and they overestimate the volume and value of beauty products at issue in this case. *See*, Dkt. # 1-7, p. 29.

Second, the allegations in the Complaint make clear that the practice of reselling used beauty products was limited to Defendant's retail stores, such that the beauty products sold on Defendant's website are categorically excluded from being at issue in this case. *See, e.g.*, Complaint, ¶¶ 12-13. Similarly, the Complaint does not allege that Defendant resold used beauty products at *all* of its retail locations (*See*, Complaint, ¶ 19)—and, in fact, Defendant's Notice

---

[2] As noted above, Defendant's Notice outright *denies* that Defendant resold used beauty products *at all*, such that, based on the face of the Notice, there is *no* amount in controversy. *See*, Dkt. # 1, ¶ 12. However, for purposes of this Section of the Motion, it is assumed, *arguendo*, that the allegations made on the face of the Notice are sufficient, and are to be considered in light of the allegations in Plaintiff's Complaint and the evidence proffered in support of the Notice.

[3] For example, on Defendant's website, blow dryers cost hundreds of dollars (Ulta Beauty, *Hair Dryers*, available at: https://www.ulta.com/hair-styling-tools-hair-dryers?N=26xo), whereas facial makeup costs approximately $25 (Ulta Beauty, *Face*, available at: https://www.ulta.com/makeup-face?N=26y3). Defendant's full service salon styling services can also cost over $100. Ulta Beauty, *Services Menu*, available at: https://www.ulta.com/beautyservices/menu-a.html?location_id=1357.

denies that Defendant resold used beauty products at *any* of its retail locations (*See*, Dkt. # 1, ¶ 12). These limitations reduce the total number of beauty products that are *potentially* at issue, and renders the sales data in Defendant's 2017 Annual Report—which encompasses *all* sales from Defendant's retail stores and on its website, including products and services that are outside the scope of this lawsuit—a poor proxy for the number of products at issue in this case. *See*, Dkt. # 1-7, p. 29.

Third, this case does not concern *all* of the beauty products sold at *some* of Defendant's retail stores, but rather, only beauty products that were previously **used and returned** by Defendant's customers and subsequently purchased by Defendant's customers. *See, e.g.*, Complaint, ¶¶ 2, 12-18. Moreover, the Complaint does not allege that *all* used and returned beauty products were actually resold by Defendant, as only used and returned beauty products that were removed from Defendant's "damage bin" and placed back on Defendant's shelves for sale could have been purchased by Defendant's customers. *See, e.g.*, Complaint, ¶¶ 12-18.

In fact, used and returned beauty products would only *potentially* be resold depending on whether they looked "clearly used" and could be reconditioned to make it "difficult to tell if they were used." *See, e.g.*, Complaint, ¶ 17. Even then, the decision to remove a used and returned beauty product from Defendant's "damage bin" and actually offer them for sale to customers depended on Defendant's policy of placing a quota as to the number of returned items that could be deemed to be "damaged" at each retail store, and how many products were deemed "damaged" in relation to that quota. *See, e.g.*, Complaint, ¶¶ 15-16.

Again, Defendant denies the material allegations in Plaintiff's Complaint—such as the existence of any policy placing a quota on the number of items that could be deemed to be "damaged," and that any used beauty products were even sold to its customers—which would

8

further reduce the limited number of used and returned beauty products *potentially* purchased by Defendant's customers. *See*, Dkt. # 1, ¶ 12.

In sum, unlike the circumstances in *Spivey*, the Complaint does not bring the propriety of *all* of Defendant's sales to consumers into question, but rather, a very limited subset of those sales that occurred at specific retail locations. *Spivey*, 528 F.3d at 986-87. As such, the 2017 Annual Report—which is extremely overbroad and a poor estimate of the actual number of used and returned beauty products at issue—is insufficient to support Defendant's allegation that the amount in controversy exceeds $5 million in this case. This is in addition to the fact that Defendant outright denies that it resold *any* used beauty products, which further negates its allegation that CAFA's jurisdictional threshold has been exceeded. *See*, Dkt. # 1, ¶ 12.

As noted above, Defendant, as the proponent of federal jurisdiction, was *required* to assert the bases—of which it is uniquely aware—upon which that jurisdiction is appropriate in the Notice. *Brill*, 427 F.3d at 447; *Barnes*, 2017 WL 6947882 at *2. However, Defendant failed to provide a plausible and adequately supported estimate of its "maximum exposure," and did not meet its burden of establishing that CAFA jurisdiction is appropriate. *Brill*, 427 F.3d at 447; *Blomberg*, 639 F.3d at 763; *Roppo*, 869 F.3d at 579. Indeed, "Defendant's 'wait and see' approach"—as evidenced by the fact that it denies the allegations in the Complaint and failed to perform any investigation into the actual number of retail stores and products at issue—"negates the basis on which it filed its removal petition." *Barnes*, 2017 WL 6947882 at *2; *Mocek*, 220 F.Supp.3d at 911 ("Defendant tried to have it both ways by asserting, then immediately disavowing, federal jurisdiction."). Therefore, the Court should remand this matter to the Circuit Court of Cook County pursuant to 28 U.S.C. § 1447(c).

## IV. CONCLUSION.

Defendant, as "the proponent of jurisdiction," had the burden of establishing the propriety of federal jurisdiction, and bore "the risk of non-persuasion." *Brill*, 427 F.3d at 447; *Sadowski*, 441 F.3d at 540. Defendant's Notice did not meet that burden, and this matter should be remanded to the Circuit Court of Cook County pursuant to 28 U.S.C. § 1447(c).

WHEREFORE, Plaintiff, individually and on behalf of all others similar situated, prays that the Court enter an order remanding this matter to the Circuit Court of Cook County, awarding Plaintiff the costs and expenses incurred—including attorneys' fees—as a result of Defendant's improper removal of this action pursuant to 28 U.S.C. § 1447(c), and for any other relief deemed just and appropriate.

                                        Plaintiff MEGHAN DEVRIES, individually, and on behalf of all others similarly situated,

By:   s/Matthew C. De Re
      Thomas A. Zimmerman, Jr.
      *tom@attorneyzim.com*
      Matthew C. De Re
      *matt@attorneyzim.com*
      ZIMMERMAN LAW OFFICES, P.C.
      77 West Washington Street, Suite 1220
      Chicago, Illinois 60602
      Tel: (312) 440-0020
      Fax: (312) 440-4180
      www.attorneyzim.com

*Counsel for Plaintiff and the putative Classes*

## **CERTIFICATE OF SERVICE**

Matthew C. De Re, an attorney, hereby certifies that he caused the above and foregoing *Motion to Remand Pursuant to 28 U.S.C. § 1447(c)* to be served upon counsel of record in this case via the U.S. District Court CM/ECF System, on this 12th day of March, 2018.

s/Matthew C. De Re